IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LINDA S. PERRIN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-cv-142-TFM |
| | ) | [wo] |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Linda S. Perrin ("Plaintiff" or "Perrin") applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income under Title XVI §§1381-1383c, on October 21, 2009.  Tr. 18.  After being denied on February 22, 2010, Perrin timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on July 1, 2011.  Tr. 18, 27.  Perrin subsequently petitioned for review to the Appeals Council who rejected review of Perrin's case on December 23, 2011.  Tr. 1.  As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").  *Id.*  Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c).  After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

### I. NATURE OF THE CASE

Perrin seeks judicial review of the Commissioner's decision denying her

application for disability insurance benefits and supplemental security income benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. §

423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate

and distinct program.  SSI is a general public assistance measure providing an additional

resource to the aged, blind, and disabled to assure that their income does not fall below

the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See*

42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate

programs, the law and regulations governing a claim for DIB and a claim for SSI are

identical; therefore, claims for DIB and SSI are treated identically for the purpose of

determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.

1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the

meaning of the Social Security Act which defines disability in virtually identical language

for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§

404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is

unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one

resulting from anatomical, physiological, or psychological abnormalities which are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.
*See* Social Security Administration, Social Security Handbook, § 136.1, *available at*
http://www.ssa.gov/OP_Home/handbook/handbook.html
[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general
tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100,
*available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

## IV.  ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Perrin, age 52 at the time of the hearing, has completed the 12th grade and can read, write, and do math.  Tr 38-39.  Perrin performed past relevant work as a retail cashier (semi-skilled, light), telemarketer (semi-skilled, sedentary), and snack bar attendant (semi-skilled, light).  Tr. 52-53.  Perrin has not engaged in substantial gainful work activity since her alleged disability onset date of October 30, 2008.  Tr. 20.  Perrin meets the insured status requirements of the Social Security Act through December 31,

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

2013.  *Id.*  Perrin claims she is unable to work because of nerve pain in her leg due to diabetes, depression, high blood pressure, arthritis in her knees and shoulders, and a herniated disc in her neck. Tr. 24, 43.  Perrin was not asked to rate her pain on a ten point scale.

Perrin received treatment from several medical practitioners and the ALJ considered the medical records from each.   In January of 2002, Perrin underwent a consultative examination by Dr. Karen A. Pirnot, Ph.D. whose diagnoses was depression. Tr. 21, 200-01.   In December of 2009, Perrin was evaluated by Dr. David Ghostley, Psy.D.  Tr. 362.  Perrin told Dr. Ghostley she took antidepressants for fourteen years and that she was responding well to Lexapro.  Tr. 21, 362.  After a mental status examination, Dr. Ghostley opined that Perrin's ability to "function independently and manage finances is unimpaired," and her "ability to understand, remember, and carry out instructions, as well as respond appropriately to supervisors, co-workers, and work pressures in a work setting, is mildly to moderately imparied."  Tr. 21, 363.  The ALJ found that Perrin only has mild limitations in the functional areas of activities of daily living, social functioning, concentration, persistence or pace, and has experienced no episodes of decompensation. Tr. 21-23. The ALJ concluded that "[b]ased upon a review of the longitudinal medical record, the undersigned concludes that the claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities, and is therefore non-severe."  Tr. 21.

Perrin has been treated for several medical conditions including: diabetes, hypertension, obesity, chronic obstructive pulmonary disease ("COPD"), multilevel

degenerative disc disease, mild degenerative change of the left knee, and sleep apnea.  Tr. 24.  From August 2006 through January 2009, Perrin sought treatment exclusively from Sarasota Memorial Hospital ("SMH").  Tr. 202-47, 338-60, 411-14.  On December 28, 2008, Perrin went to the Emergency Department to be evaluated for her back/shoulder pain.  Tr. 338.  Perrin reported that she has been in constant pain for two months since lifting her wheelchair-bound grandmother over a curb.  *Id.*  Perrin stated that other doctors have given her medication, but they have not helped to relieve her pain.  *Id.*  Dr. Mark Mahoney ("Dr. Mahoney") noted that Perrin had very localized tenderness producing discomfort with the range of motion in her left shoulder, but that there are no masses palpated and no erythema.  Tr. 339.  X-rays were done, but came back negative.  *Id.*  Perrin was given Toradol, and her arm was placed in a sling.  *Id.*  Upon discharge, Dr. Mahoney prescribed Percocet, and noted that Perrin's condition was improved.  *Id.*

In January 2008, Perrin sought treatment for headaches and neck pain.  Tr. 214.  Dr. Rickey Wiseman conducted tests and found that there was no fracture or dislocation, no prevertebral soft tissue swelling, and the neural foramen, spinous processes, and discs spaces were intact.  *Id.*  Dr. Wiseman's impression was that it was an unremarkable exam.  *Id.*  In August 2006, Perrin saw Dr. Wiseman for knee pain.  Tr. 230.  Dr. Wiseman ordered tests to be performed on Perrin's knee and found minimal degenerative change on the patellofemoral joint, and minimal hypertrophic change involving tibial intercondylar eminences.  *Id.*  Dr. Wiseman found no fracture, joint effusion, abnormal tissue calcification, or other bony abnormality.  *Id.*  Additionally, Perrin visited SMH several times for treatment not related to the underlying impairments involved in the case at bar,

such as: abdominal pain and groin strain (Tr. 210-11, 213), a mammogram (Tr. 215), stress urinary incontinence (Tr. 217, 219, 221), vocal cord mass surgery and recovery (Tr. 222-24).

In January 2009, Perrin returned to SMH with complaints of neck pain.  Tr. 203. Dr. Wiseman conducted a cervical spine series and compared the results with a January 2008 study.  *Id.*  Dr. Wiseman noted a minor reversal of the cervical lordosis, minimal narrowing of the C6-C7 disc space, vertebral bodies appeared intact, bony foramina were normally oriented and bilaterally widely patent, odontoid process was intact, and found right-sided atherosclerotic carotid vascular calcification.  *Id.*  Dr. Wiseman found that in comparison to the year old study, Perrin's degenerative disc disease only appeared to be "minimally worsened at C6-C7."  *Id.*  Dr. Wiseman's final impression was minimal degenerative disc disease at C6-C7.  *Id.*  Dr. Wiseman also conducted a MRI of Perrin's cervical spine without contrast.  Tr. 205.  After a full discussion of five pairs of the cervical spine segments, Dr. Wiseman's impression was a "[l]arge left-sided disc herniation at C6-C7, with disc extrusion inferiority," "[r]eversal of the cervical lordosis with mild degenerative change," and "[s]mall disc herniation at C5-C6, producing mild central canal stenosis."  *Id.*

Perrin has also regularly sought treatment from January 2007 through March 2009 at the Sarasota County Health Department ("SCHD") for a variety of health issues.  Tr. 248-328.  Perrin's diagnosed type II diabetes was regularly monitored at SCHD.  Tr. 256-287.  In June 2007 Dr. Matthew Farrugia found that Perrin's diabetes was uncontrolled. Tr. 413.  About eight months later in February 2008, Perrin's diabetes was noted as being

controlled.  Tr. 272.  In April 2008, Perrin's diabetes was noted as being under "fair control."  Tr. 270.  As recently as March 2009, Perrin's diabetes was once again reported as being controlled.  Tr. 257.

Perrin was also treated by SCHD for back/shoulder, and neck pain.  In April 2007, Perrin sought treatment for lower back pain, and was prescribed anti-inflammatory medication and counseled.  Tr. 281.  In August 2008, Perrin complained of left shoulder pain, along with tingling sensations in her left elbow and hand.  Tr. 267.  The doctor prescribed a muscle relaxant, and an anti-inflammatory.  *Id.*  Perrin returned to SCHD in December 2008, for the same back/shoulder pain that was treated at SMH.  Perrin was found to have a disc herniation and was prescribed ibuprofin.  Tr. 261.  In February 2009, Perrin came in for a checkup and when asked about her usual neck and shoulder pain, Perrin reported that she has had no pain for the previous three days.  Tr. 258.

On January 5, 2010, Perrin saw Dr. Richard L. Bendinger, Jr., D.O. for a consultative examination.  Tr. 365.  Perrin said that she has chronic neck and upper arm pain from her cervical disc disease, chronic lumbar pain, pain with range of motion, and pain with standing.  Tr. 366-67.  Perrin also said that she has numbness in her legs and feet.  Tr. 366.  Dr. Bendinger performed a detailed physical examination of Perrin.  Tr. 367.  Dr. Bendinger found that Perrin has a painful range of motion in her neck and cervical spine "with only 30 degrees of flexion and 40 degrees of extension with 30 degrees of right and left lateral flexion and 50 degrees of right and left lateral rotation.  *Id.* Perrin had a "grossly normal" range of motion in both her upper and lower extremities although it was noted that she has generalized osteoarthritis.  Tr. 367-68.  Dr. Bendinger

found that Perrin's back had no spasms or deformity, the range of motion was grossly normal in the lumbar spine, straight leg raising test was negative; however, he noted "some tenderness and pain with range of motion." Tr. 368. Dr. Bendinger found that Perrin was able to walk over twenty feet with a normal tandem gait, her station was normal, she could squat down to twenty-four inches from the floor, but could not walk heel to toe due to poor balance. *Id.* Dr. Bendinger found that Perrin had "equal strength in all major muscle groups comparing the right to left," with her general muscle strength at 3/5 bilaterally, and grip strength 3/5. *Id.* Dr. Bendinger also noted no loss of sensation to pin prick or cold, reflexes are 2+ in the upper and lower extremities, supine and seated straight leg raising was negative, no atrophy was noted, no Romberg was noted, and fine and gross manipulation was "basically normal." *Id.* Dr. Bendinger's diagnoses were: multi-level degenerative disc disease, hypertension, sleep apnea, obesity chronic back pain, radicular pain in upper extremities secondary to cervical disc disease, type II diabetes, depression by history, and diabetic neuropathy. Tr. 369.

On February 12, 2010, Dr. Robert Little, M.D. of Flowers Hospital performed a pulmonary function test on Perrin. Dr. Little found only a "mild obstruction" and "[p]ostbronchodilator improvement in the FEF 25-75." Tr. 406.

From May 2009 through April 2011, Perrin also sought treatment at Quitman Health Care ("QHC").[5] Tr. 418-34, 525. 528-37. On June 9, 2009, Perrin sought treatment for her wheezing and coughing as a result of her COPD, and was prescribed multiple medications. Tr. 425-26. On August 11, 2009, Perrin's hypertension was noted

---

[5] Quitman Health Care is the Georgetown office location for Southwest Georgia Health Care, Inc. Medical records under both headings will be referred to as Quitman Health Care.

as "at goal," and lab work revealed that her diabetes was within the appropriate range for adults with diabetes recommended by the American Diabetes Association. Tr. 424, 431. On March 3, 2010, Perrin returned to QHC with a cough, fever, and body aches. Tr. 432. Perrin was checked for suspected COPD exacerbation and pneumonia. Tr. 433. The nurse gave Perrin a bronchodilator and a corticosteroid medications. *Id.* After about fifteen minutes, Perrin said she "feels a little better." *Id.* Perrin was referred to the ER for further treatment; however, the only evidence submitted regarding that visit to SMH are two medical billing statements. Tr. 407-408, 433.

Perrin was also treated at Medical Center Barbour ("MCB") from June 2009 through October 2010. Tr. 329-37, 435-522, 526-27. On June 5, 2009, Perrin sought treatment from MCB's cardiopulmonary department for coughing, wheezing, and nasal congestion. Tr. 330. The doctor's diagnosis was acute exacerbation of asthma, and sinusitis. Perrin's status was marked as "good" and she was given three medications including Flonase and a refill of her Albuterol inhaler. Tr. 330-32. Perrin sought treatment at MCB on June 6, 2010 due to shortness of breath that had gotten progressively worse. Tr. 436. Perrin was admitted due to COPD exacerbation, and remained hospitalized through June 9, 2010. *Id.* Perrin was placed on an IV cocktail and was noted as having gradually improved during her three day stay. *Id.* Perrin was sent home with four liters of oxygen, Nicoderm for her thirty-year tobacco addiction, anti-bacterial medications, corticosteroid, diuretic, antidepressant, cholesterol inhibitors, diabetic supplement, and an inhaler. Tr. 436-37. Check-ups done on both June 6, 2010 and June 7, 2010 reveal no complaints of pain, and Dr. Jeffrey Kingsley and Dr. Andre

Johnson noted Perrin's neck was supple, and extremities all moved well with a full muscle strength of 5/5.  Tr. 436, 438-39.

After review of the medical records, the ALJ found that the described impairments of diabetes, multilevel degenerative disc disease, mild degenerative change of the left knee, hypertension, obesity, sleep apnea, and COPD limit Perrin's ability to perform a full range of exertional work-related activities, and are severe within the definition of the Act.  Tr. 20.  The ALJ found that Perrin "has the residual functional capacity to perform light work" except that she can only "lift 20 pounds occasionally and 10 pounds frequently, [. . .][s]he can sit for 8 hours and stand/walk in combination for at least 6 hours, during an 8-hour workday, [. . .] [s]he must avoid exposure to extremes in temperature and pulmonary irritants, [and] [s]he would also need to be allowed to shift/alter body positioning at 2 hour intervals."  Tr. 23.  The ALJ found that Perrin is capable of performing past relevant work as a retail cashier, telemarketer, and snack bar attendant.  Tr. 26.

## V.  ISSUES

Perrin raises three issues for judicial review:

(1) Whether the ALJ's finding that Perrin is capable of performing light work is supported by substantial evidence;

(2) Whether the ALJ properly applied the pain standard; and

(3) Whether the ALJ properly considered Perrin's credibility.

*See* Doc. 11 at 5.

# VI.   Discussion

**A.    The ALJ's finding that Perrin is capable of performing light work is supported by substantial evidence.**

Perrin argues that the ALJ's RFC determination that Perrin is able to perform light work with certain limitations is not supported by substantial evidence.  *See* Doc. 11 at 5. Specifically, Perrin's argument is twofold: 1) "[t]here is no comprehensive Physical RFC assessment in the record completed by a physician which states Ms. Perrin is capable of performing light work;" and 2) "the ALJ erred in providing any weight to this [Single Decision-Maker] RFC form or even considering and evaluating it in arriving at her RFC assessment."  *See* Doc. 11 at 7-8.  The Government responded that there "is no merit to Plaintiff's contention that the ALJ's decision was not based on substantial evidence."  *See* Doc. 14 at 8.

First Perrin argues that there is no Physical RFC assessment in the record to support the ALJ's finding that Perrin can perform light work with limitations.  *See* Doc. 11 at 7.  "After careful consideration of the entire record," the ALJ found that:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b).  The claimant can lift 20 pounds occasionally and 10 pounds frequently.  She can sit for 8 hours and stand/walk in combination for at least 6 hours, during an 8-hour workday. She must avoid exposure to extremes in temperature and pulmonary irritants.  She would also need to be allowed to shift/alter body positioning at 2 hour intervals.

Tr. 23.  At this point in the five-step, sequential evaluation the burden is on the claimant to prove that she is disabled.  *Jones*, 190 F.3d at 1228 (citing 20 C.F.R. § 416.912 (1998)); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "At the

fourth step, the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work.  *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(a)(4)(iv)).  To determine the claimant's RFC, the ALJ "must determine if the claimant is limited to a particular work level." *Id.*  To be deemed capable of performing light work, the claimant must have the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and be able to do "a good deal of walking or standing, [able to be] sitting most of the time, [and able to do] some pushing and pulling of arm or leg controls." 20 C.F.R § 404.1567(b).  "Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (citing 20 C.F.R §§ 404.1513, 404.1527, 404.1545).

In *Green*, the ALJ discredited the only physician RFC assessment that was in the record, and the plaintiff argued that the ALJ lacked substantial evidence to base his RFC assessment without a physician's RFC.  *Id.*  The Eleventh Circuit stated that even without considering a physician's RFC assessment, the record indicated that she was managing her impairments well, and her symptoms were controlled.  *Id.* at 923-24.  As a result, the Eleventh Circuit found that "substantial evidence supports the ALJ's determination that Green could perform light work."  *Id.* at 924.  Similarly, in *Griffin v. Astrue*, the plaintiff argued that a physician's RFC assessment was required.  2008 WL 4417228, *9 (S.D. Ala. Sept. 23, 2008).  The court found that despite not having a physician's RFC, the

ALJ's RFC was "supported by the claimant's treating physicians, as well as the absence of functional limitations placed on the claimant by any medical source." *Id.* at *10. The court noted that "[w]hile Plaintiff asserts that a physician's RFC assessment was required, she has not demonstrated that the ALJ did not have enough information to enable him to make a RFC determination, nor has she pointed to any medical evidence which suggests that the ALJ's RFC assessment is incorrect." *Id.* The court ultimately held that "substantial evidence supports the ALJ's determination that Plaintiff possesses the RFC to perform light work" because the medical records demonstrated that despite having severe impairments, her condition was stable and controlled with medication. *Id.* The court also found that the medical records did not reveal any evidence of functional limitations, and none of the plaintiff's physicians limited her activities. *Id.*

After review of the ALJ's opinion, it is clear to this Court that the ALJ carefully considered the medical evidence in the record in determining Perrin's RFC. The Court recognizes that the record lacks a RFC assessment completed by a physician. A RFC assessment is used to determine the claimant's capacity to do as much as they are possibly able to do despite their limitations. *See* 20 C.F.R. § 404.1545(a)(1) (2010). An RFC assessment will be made based on all relevant evidence in the case record. *Id.*; *Lewis*, 125 F.3d at 1440. At an ALJ hearing, "the [ALJ] is responsible for assessing [the claimant's] residual functional capacity." 20 C.F.R. § 404.1546(c) (2010). The claimant is "responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3) (2010). The ALJ is "responsible for developing [the claimant's] complete medical history, including

arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [their] own medical sources. *Id.; Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988). "The ALJ is not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is not necessary for an informed decision." *Nation v. Barnhart,* 153 Fed. Appx. 597, 598 (11th Cir. 2005) (citing *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999)); *see also Griffin,* 2008 WL 4417228, at *10 (citing 20 C.F.R. § 416.912(d)) ("The ALJ is bound to make every reasonable effort to obtain all the medical evidence necessary to make a determination [. . .]; however, he is not charged with making Plaintiff's case for her"). As previously stated, Perrin "has the burden of proving that she is disabled." *Id.* (citing 20 C.F.R. § 416.912(a) and (c); *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir. 1987). The lack of a physician's RFC assessment in the record falls upon the claimant; the duty to obtain sufficient medical records to make a disability determination falls upon the ALJ.

Here, the ALJ found that "the record documents severe medically determinable physical impairments for diabetes, multilevel degenerative disc disease mild degenerative change of the left knee, obesity, sleep apnea, and [COPD]." Tr. 24. However, the ALJ noted that Perrin's diabetes was "controlled." Tr. 24. Similarly, Perrin's hypertension was noted as "at goal" throughout the record, and medication helped control her blood pressure. Tr. 24-25. Further, the ALJ noted that although Perrin "has a long history of smoking cigarettes, the record provides that she has had ongoing treatment and hospitalization for her COPD." Tr. 24. However, the ALJ noted that as recently as

February 2010, a pulmonary functioning test "disclosed only mild obstruction and postbronchodilator improvement in the FEF 25-75," and that medications helped her breathe.  Tr. 24-25.

The ALJ reviewed Perrin's diagnosis of cervical spine disc herniation, secondary to left arm radiculopathy, and MRIs of her cervical spine confirmed large left-sided hernation at C6-7, with disc extrusion, a reversal of the cervical lordosis with mild degenerative change, and small disc hernation at C5-6 producing mild central canal stenosis.  Tr. 24.  Similarly, the ALJ reviewed objective medical evidence regarding her knee pain after an x-ray disclosed "mild degenerative change, and suggestion of narrowing medial knee joint compartment."  *Id.*  After considering the record in full and Perrin's testimony, the ALJ found that "the longitudinal medical evidence does not support the severity of impairments alleged or the presence of disabling physical impairments that would preclude claimant from all work."  Tr. 25.  The ALJ gave great weight to the consultative examination performed by Dr. Bendinger in January 2010 and found:

> Although the claimant had painful range of motion in her cervical spine, there were no bruits, no thyromegaly, and no jugular venous distention. [. . .] Range of motion in the upper and lower extremities was grossly normal, although she did have generalized osteoarthritis changes in the hands and knee, bilaterally with crepitance noted.  There was no spam or deformity noted in the claimant's back, and range of motion was normal in the lumbar spine.  Straight leg raising was negative.  The claimant could walk over twenty feet with normal gait, station was normal, and she could squat and tandem walk.  She had equal strength in all muscle groups, there was no loss of sensation, Romberg was negative, and fine and gross manipulation was basically normal.

*Id.*  The ALJ also found that Dr. Bendinger's diagnostic impression "points to the

conclusion that the claimant could sustain work less than a Full Range of light work despite her physical impairments." *Id.* As a result, the ALJ held:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.

*Id.* The ALJ further stated that "the evidence of record does not support the claimant's allegations of totally incapacitating symptomataology." Tr. 26.

The ALJ also considered the findings and opinions of Dr. Doreen Dupont, M.D. who performed a consultative examination in December 2001. Tr. 25. Although the ALJ found Dr. Dupont's findings and diagnoses to be consistent with Dr. Bendinger's, the ALJ held that Dr. Dupont's findings are "too remote and have limited relevance to the alleged onset date in October 2008. *Id.* As a result, the ALJ gave Dr. Dupont's opinion little weight. *Id.*

The ALJ is responsible for determining Perrin's RFC, not a physician. Had Perrin received an assessment by a physician, the ALJ would have been required to consider that assessment in making his determination. "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The [ALJ] has a duty to develop the record where appropriate but is not required to order [additional evidence] as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir.

2001)).  Thus Perrin did not meet her responsibility to provide the evidence she wanted the ALJ to use in making her determination.  It is clear to this Court that the ALJ carefully considered the medical evidence in the record in determining Perrin's RFC.  Therefore, the Court finds that the ALJ's findings are supported by substantial evidence.

Next, Perrin argues that "the ALJ erred in providing any weight to this [Single Decision-Maker] RFC form or even considering and evaluating it in arriving at her RFC assessment."  *See* Doc. 11 at 7-8.  On February 22, 2010, Dr. Ericka Morris, a Single Decision-Maker ("SDM"), completed a Physical RFC Form.  Tr. 57-64.  Perrin argues that "[i]t is apparent from the physical limitations imposed by the SDM in this case and the ALJ's RFC that the ALJ gave weight to the Physical RFC Form completed by the SDM."  *See* Doc. 11 at 7.  As noted by Perrin, SDM forms "are not opinion evidence at the appeals level."  *Id.*  However, Perrin's argument fails because there is no evidence that the ALJ reviewed or considered the SDM form.  The ALJ never mentions the SDM form, nor does she mention Dr. Morris.  The ALJ's opinion is entirely devoid of any mention or reference of the SDM form.  Perrin argues that the ALJ's RFC determination makes it "apparent" that the ALJ used the SDM form in reaching her findings; however, there is absolutely no evidence in the record to support that claim.  Therefore, this Court finds that Perrin's argument is completely without merit.

**B.    The ALJ properly applied the pain standard.**

Perrin argues that the ALJ failed to properly apply the Eleventh Circuit's two-part pain standard.  *See* Doc. 11 at 8-11.  More specifically, Perrin argues the ALJ did not properly apply the second step of the pain standard.  *See* Doc. 11 at 10-11.  The

Government responded that "the ALJ properly considered the requirements of the Eleventh Circuit's 'pain standard' in finding that Plaintiff was not disabled by her impairments." *See* Doc. 14 at 11.

The five-step sequential analysis set forth in regulations require that a claimant prove that she is disabled.  20 C.F.R. § 404.1512; *Jones*, 190 F.3d at 1228.  The Eleventh Circuit has set forth criteria to establish a disability based on testimony about pain and other symptoms.  It explained that:

> the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225  (11th Cir. 2002) (citations omitted).

A "claimant's subjective testimony supported by medical evidence that satisfies the [pain] standard is itself sufficient to support a finding of disability." *Brown*, 921 F.2d at 1236.  "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence."  *Foote*, 67 F.3d at 1561.  "When evaluating a claimant's subjective symptoms, the ALJ must consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication,

[the claimant] received for relief ... of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 Fed. Appx. 944, 947 (11th Cir. 2010) (quoting 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3)).

An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown*, 921 F.2d at 1236. When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician, and evidence of how the pain affects the claimant's daily activities and ability to work. *See* 20 C.F.R. § 416.929(a). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

A claimant's subjective testimony can establish disability if it is sufficiently supported by medical evidence. *Brown*, 921 F.2d at 1236. Testimony from a claimant alone is not conclusive evidence of disability. *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). Regulations at 20 C.F.R. § 404.1529(c)(4) permit an ALJ to consider inconsistencies or conflicts between a claimant's statements and other evidence. *Osborn v. Barnhart*, 194 Fed. Appx. 654, 664-65 (11th Cir. 2006). An ALJ's credibility determination is an important factor in the application of the pain standard. *Wilson*, 284 F.3d at 1225. The Eleventh Circuit has held that even when an ALJ does not "cite or refer to the language" of the two-part test, if he made the proper findings and his

discussion indicates that the standard was applied, the court may accept this as a proper application of the standard. *Id.* at 1225-26.

Here, it is undisputed that Perrin has underlying medical impairments. *See* Doc. 11 at 8-9; Doc. 14 at 11. However, the ALJ found that "the longitudinal evidence does not support the severity of impairments alleged or the presence of disabling physical impairments that would preclude claimant from all work." Tr. 25. The ALJ also found that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.

*Id.* Therefore, the ALJ's findings indicate that Perrin did not meet the second prong of the two-part pain test. *Id.* The ALJ stated that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire record." Tr. 24. As further laid out below, the Court finds the record provides substantial evidence for the ALJ's credibility findings. Consequently, there is no error in the ALJ's credibility determination that Perrin's testimony alone or in combination with other medical evidence in the record does not establish that Perrin's pain rises to a severity that is disabling to meet the classification of a disability.

**C.** **The ALJ properly considered Perrin's credibility.**

First, Perrin claims that "the ALJ's articulation of Ms. Perrin's daily activities as a basis to discredit her disability status is misplaced." *See* Doc. 11 at 11. Perrin cited to precedents which stand for the notion that sporadic and limited daily activities should not disqualify a claimant from a disability ruling. *Id.* Participation in everyday activities of short duration, housework, yard work, caring for animals, grocery shopping, and even occasional fishing have been cited as activities that should not discredit a claimant's disability status. *See* Doc. 11 at 11-12; *see also Carter v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *Stricklin v. Astrue*, 493 F. Supp. 2d 1191, 1197-98 (N.D. Ala. 2007); and *Early v. Astrue*, 481 F. Supp. 2d 1233, 1238 (N.D. Ala. 2007).

The ALJ noted Perrin's admission that she is:

> able to lift a gallon of milk; drive a vehicle; climb stairs, but it was rough on her knees; prepare simple meals; care for her personal needs; perform some household chores; feel with her fingertips and pickup small items; and go shopping at the grocery store if she has a cart to hang on to.

Tr. 25. The ALJ, however, also found that "[i]n total, claimant's admission that her medications generally control her impairments and her significant activities of daily living (including caring for her mother and 87 year old wheelchair bound grandmother for a period of time), is hardly suggestive of total disability." Tr. 26.

Participation in everyday activities of short duration, such as housework or fishing does not disqualify a claimant from disability, especially when the activities are not inconsistent with the limitations recommended by a claimant's treating physicians. *Lewis*, 125 F.3d at 1441. It is well settled that the ALJ must articulate adequate reasons for discrediting a claimant's testimony. *Lanier v. Comm'r of Soc. Sec.*, 252 Fed. Appx.

311, 314 (11th Cir. 2007). Inconsistencies between a claimant's testimony of daily activities and the amount of pain or claims of infirmity have been found to be an adequate reason for discrediting a claimant's testimony. *Id.*; *see also Moore*, 405 F.3d at 1212.

First, although the Court agrees that this Circuit has continually held that limited daily activities should not disqualify a claimant from disability, it does not bar all considerations of daily activities. Here, the ALJ clearly distinguished between Perrin's limited daily activities and her activities of a more demanding nature. The ALJ discussed Perrin's limited daily activities solely while outlining her hearing testimony, and did not make any holding with regards to these activities. Tr. 25. However, the ALJ did find that Perrin's "*significant activities* of daily living (including caring for her mother and 87 year old wheelchair bound grandmother for a period of time), is hardly suggestive of total disability." Tr. 26 (emphasis added). The ALJ clearly based his finding on Perrin's "significant activities of daily living" which involved Perrin being a caretaker for her mother and wheelchair-bound grandmother. *Id.* The ALJ found that Perrin's claim of total disability is not consistent with her daily activities of a significant nature, and did not make any credibility assessment regarding Perrin's testimony about her limited daily activities such as driving, shopping, preparing meals, and basic housework. *See* Tr. 25-26. Perrin's argument fails because the ALJ articulated adequate reasons for discrediting Perrin's testimony.

Next, Perrin avers that "the ALJ's enunciation of Ms. Perrin's alleged lack of treatment is impermissible as a basis to discredit her disability status." *See* Doc. 11 at 13. However, the ALJ never questions Perrin's breadth of medical records. In fact, the

medical records are quite voluminous, which is admitted by Perrin. *See* Doc. 11 at 14.

Perrin cites to the ALJ's statement that "[t]he longitudinal medical evidence does not

support the severity of impairments alleged or the presense of disabling physical

impairments that would preclude claimant from all work."   Tr. 25.   Perrin clearly

misunderstood the ALJ's argument in this respect.   The quoted statement means nothing

more than after review of the medical records that span several years, the ALJ does not

find the medical records to be consistent with the severe impairments that Perrin claims

preclude her from working.   This statement actually contradicts Perrin's claim in that the

ALJ's description of "longitudinal medical evidence" suggests that she reviewed records

that span across a length of time.   The sole reference to a lack of medical records is from

Perrin's own statement that her daughter loaned her money to seek treatment and stated

"so that's why you're probably not going to find a whole lot of records" when the ALJ

was obtaining authorization to update Perrin's medical records from QHC.   Tr. 48.

Perrin continues this argument and claims the ALJ improperly ignored Perrin's

testimony that she could not afford treatment. *See* Doc. 11 at 14.   In response to Perrin's

testimony during the administrative hearing regarding lack of finances, the ALJ stated:

> The claimant also suggested that she could not afford medical treatment or
> monitor her blood sugars because of financial reasons.   (Hearing
> testimony).   No evidence, however, has been provided to show that the
> claimant sought and was denied, medical assistance from indigent care
> facilities operated by various governmental and/or charitable agencies.
> Indeed, the record indicates that finances have not prevented her from
> seeking care when she feels it necessary.

Tr. 26.   Once again the ALJ did not make any finding with regards to a lack of treatment

or sparse medical records.   Instead, the ALJ simply addressed a statement that Perrin

made during her administrative hearing.  The ALJ clearly took Perrin's testimony into consideration and noted that Perrin has regularly sought, and received, treatment from various indigent care facilities such as QHC and SCHD.  Tr. 26.  Perrin has not submitted any evidence that she has been unable to receive medical treatment when she sought it, and the record clearly establishes a full medical history evidencing the ability to get treatment and prescription medication as needed.

## VII.  CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**  A separate judgment is entered herewith.

DONE this 6th day of March, 2013.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE